1

1                UNITED STATES DISTRICT COURT
                 EASTERN DISTRICT OF NEW YORK
2
   - - - - - - - - - - - - - - - -X
3  UNITED STATES OF AMERICA,      : 18-CR-123 (CBA)
                                  :
4           Plaintiff,            :
                                  : United States Courthouse
5        -against-                : Brooklyn, New York
                                  :
6  REGINALD SHABAZZ-MUHAMMAD,     :
                                  : Tuesday, October 2, 2018
7           Defendant.            : 10:30 a.m.
   - - - - - - - - - - - - - - - -X
8

9
   TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE AND PLEA
10          BEFORE THE HONORABLE CAROL BAGLEY AMON
             UNITED STATES DISTRICT SENIOR JUDGE
11

12

13                 A P P E A R A N C E S:

14 For the Government:        RICHARD P. DONOGHUE, ESQ.
                              United States Attorney
15                            Eastern District of New York
                              271 Cadman Plaza East
16                            Brooklyn, New York 11201
                              BY:  LINDSAY K. GERDES, ESQ.
17                                 ANDREY SPEKTOR, ESQ.
                                   Assistant United States Attorneys
18
   For the Defendant:         ATTORNEY AT LAW
19                            305 Broadway
                              Suite 602
20                            New York, New York 10007
                              BY:  DONALD D. DUBOULAY, ESQ.
21

22 Court Reporter:           DAVID R. ROY, RPR
                             225 Cadman Plaza East
23                           Brooklyn, New York 11201
                             drroyofcr@gmail.com
24
   Proceedings recorded by Stenographic machine shorthand,
25 transcript produced by Computer-Assisted Transcription.

Proceedings                                        2

1             (In open court.)

2             THE COURTROOM DEPUTY:  The United States against

3     Shabazz-Muhammad.  Please step forward and state your

4     appearances on the record.  Please step forward.

5             Thank you.

6             MS. GERDES:  Good morning, Your Honor.  Lindsay

7     Gerdes and Andrey Spektor for the United States.

8             THE COURT:  Good morning.

9             MR. DUBOULAY:  Good morning, Your Honor.  Donald

10    DuBoulay for Mr. Shabazz.

11            THE COURT:  Good morning.

12            MR. DUBOULAY:  Good morning.

13            THE COURT:  All right.  I think the Government has

14    wanted this matter on the calendar with regard to the

15    allocution before Judge Reyes.

16            Is that correct?

17            MS. GERDES:  Correct, Your Honor.

18            THE COURT:  All right.  Ms. Holly, do we have a

19    sentencing date here or --

20            THE COURTROOM DEPUTY:  I'm sure we do, Judge.

21            THE COURT:  All right.  So the magistrate would

22    have given us --

23            MS. GERDES:  Yes.  I believe it is --

24            THE COURTROOM DEPUTY:  A complete calendar.

25            THE COURT:  Okay.

Proceedings                                    3

1        MS. GERDES:  -- on the calendar.

2        THE COURT:  Okay.  And is it the Government's

3   position that the minutes do not support that there is a

4   factual basis for the plea?

5        MS. GERDES:  Your Honor, I think it's a very, very

6   close call.  When you talk about somebody who fully accepts

7   responsibility for their conduct, I don't think that

8   Mr. Shabazz falls into that category.  The elements that

9   we're most concerned about after reviewing the minutes is

10  really the *mens rea* and the knowing and willful elements

11  here.  Meaning, did he do this with a bad purpose?  And the

12  way he allocutes, it's almost as though he's more negligent,

13  like he just didn't double-check.  And he, at one point, was

14  employed by this mosque.  So it's just not clear to me that

15  these minutes support the knowing and willful standard that

16  is required by the statute, that he had a bad purpose or

17  corrupt purpose in submitting this letter.

18        That's something I was discussing with defense

19  counsel after he made his initial allocution.  This came as

20  quite a surprise to me, that this was the way he was going

21  to try to take responsibility for this conduct.  At one

22  point in the hearing, I even said that I think he puts

23  himself in jeopardy of even getting the two acceptance

24  points based on this type of allocution.

25        We were just before the Court, I think it was

Proceedings                                     4

1    earlier this week, for the sentencing of a co-defendant, and

2    that was somebody who fully took responsibility for his

3    actions here.  And we have Mr. Shabazz, who is suggesting

4    that this was really just carelessness almost on his part.

5         THE COURT:  Well, there are two different issues.

6    The first issue is whether it satisfies the statute; whether

7    there is a sufficient allocution.

8         Then a second issue is one that may come up later

9    in terms of whatever position the Government wants to take

10   with regard to how the guidelines should be calculated and

11   whether you view it as fully accepting responsibility.  So

12   those are two separate issues.

13        Let me just address a couple of things.

14   The Government sent a letter, or gave me a copy of a letter,

15   I guess, that they gave to Judge Reyes and you put the five

16   elements.  He pled guilty to (A)(2).  I do not think there

17   is a requirement that he did so by trick, scheme, or device,

18   so I do not know -- because that clearly is not in the

19   allocution.  But I do not know that that is a requirement

20   for 1001(A)(2).

21        MS. GERDES:  That is correct, Your Honor.  I

22   apologize.

23        THE COURT:  Do you have the letter that is the

24   subject or do you have a copy of the letter?

25        MS. GERDES:  I do.  I can hand it up to the Court.

```
                         Proceedings                      5
```

1         THE COURT:  Mr. DuBoulay, do you want to be heard?

2         MR. DUBOULAY:  Yes, Judge.  My client pled guilty

3    to a substantive offense of not conspiracy, a substantive

4    offense of making false statements.  And I think his

5    statement, his articulation is quite clear, he knowingly and

6    willfully submitted a document with the intension of

7    misleading the Bureau of Prisons, which contains false

8    statements.

9         THE COURT:  What was the false statement, though?

10        MR. DUBOULAY:  That he was the director of a drug

11   counseling program at the mosque that he no longer was.

12        THE COURT:  That is not even a false statement

13   that is charged.

14        MR. DUBOULAY:  Judge, I think that's one of the --

15   in the indictment I think that's one of the underlying

16   statements.

17        THE COURT:  Well, no.  The false statements in

18   Count 2, that is what he pled guilty to, correct?

19        MR. DUBOULAY:  That is right.

20        THE COURT:  That he falsely stated that Marshall

21   was enrolled in a treatment program; that he was suffering

22   from active drug dependence; and while enrolled in the

23   program, he was gradually reducing his active substance

24   dependence when, in fact, as the defendants, then and there

25   well knew and believed, he had never been enrolled in the

Proceedings                                6

1   program; was not suffering from active drug offense and was

2   not abusing drugs or alcohol.

3           So it is not actually charged as one of the

4   material false statements that he was the director at that

5   time, so...  I mean, it says one or more, you know, perhaps,

6   he could be convicted on that as a false statement, I don't

7   know, but those are not the false statements charged.

8           MR. DUBOULAY:  I understand that, Judge.

9           But his allocution, I think, was to a material

10  fact that he knowingly submitted a false statement, and I

11  think the subsequent questioning by the Government brought

12  out the fact that he understood that those things not to be

13  true, the statement that the Government subsequently

14  followed up with.

15          THE COURT:  I do not know that it says anywhere in

16  the letter that he was his treatment provider.  It just

17  talks about the program.  It says, "This letter is being

18  provided to inform you of the program participation of

19  Richard Marshall in our community outreach program."  It

20  says, "Under the voluntary guidance of this writer, who is a

21  credentialed alcohol and substance abuse counselor, our

22  program models and finds both faith-based initiatives..."

23  et cetera, and then it goes on.

24          But I do not think at any point -- and Ms. Gerdes,

25  you can correct me if I am wrong, but he says that he was

Proceedings                                    7

1    the one who treated Mr. Marshall.

2         MS. GERDES:  I think that's correct.

3         THE COURT:  Mr. DuBoulay, why are we playing these

4    kinds of games at this point in time?  I mean, it is in

5    Mr. Marshall's interest to give a full and complete

6    allocution here, not simply for the purposes of accepting

7    his plea, but also for whether there has been acceptance of

8    responsibility.  And it just seems to me like this is going

9    to be a problem down the road that should be straightened

10   out now and not later.

11        Do you want to talk to your client?

12        MR. DUBOULAY:  Yes, Judge.

13        THE COURT:  Maybe you ought to.

14        (Pause in proceedings.)

15        MR. DUBOULAY:  Judge, okay, we just -- Judge, he's

16   ready to re-allocute as to the facts of this case, his

17   activity in this case.

18        THE COURT:  All right.  You know what?  Why don't

19   we just take the plea.

20        MR. DUBOULAY:  That's fine, Judge.

21        THE COURT:  Why not.

22        Mr. Shabazz-Muhammad, your --

23        Do you have a plea agreement?  Did you give me a

24   copy?

25        MS. GERDES:  I did submit one, Your Honor.  I have

```
                        Proceedings                    8
```

1    another copy --

2              THE COURT:  Okay.

3              MS. GERDES:  -- if you need one.

4              THE COURT:  Or I have it.

5              MS. GERDES:  Okay.

6              THE COURT:  I have it here.

7              MS. GERDES:  Yes, I have the original.  I can show

8    it to the defense.

9              THE COURT:  Mr. Shabazz-Muhammad, I realize that

10   you had an earlier session before the magistrate judge in

11   which he asked you a whole series of questions in connection

12   with your guilty plea, and then there was some question

13   about whether the statements that you made at the end were

14   sufficient.  I am going to redo the plea just so that I

15   assure myself that all those preliminary steps have been met

16   here.  So I am told that you still wish to enter a guilty

17   plea to Count 2.

18              Is that correct?

19              THE DEFENDANT:  Yes, it is.

20              THE COURT:  All right.  Well, this is a very

21   serious decision, and I have to make sure that you

22   understand all of your rights and the consequences of your

23   plea.  I am going to have to ask you a whole series of

24   questions, and I do require that your answers to my

25   questions be made under oath.  So my courtroom deputy will

```
                        Proceedings                     9
```

1   administer an oath for you to tell the truth.

2   R E G I N A L D    S H A B A Z Z-M U H A M M A D,

3              called as a witness having been

4              first duly sworn/affirmed, was examined and

5              testified as follows:

6              THE COURTROOM DEPUTY:  Thank you.

7              THE COURT:  Having been sworn to tell the truth,

8   you have to do that.  If you were to lie on purpose in

9   response to any questions that I ask you, you could face a

10  further criminal charge for perjury or false.

11             Do you understand that?

12             THE DEFENDANT:  Yes, I do.

13             THE COURT:  If there is anything that I say that

14  is not clear to you, you just tell me that it is not clear

15  and I will try and make it plainer.

16             Is that clear?

17             THE DEFENDANT:  Yes.

18             THE COURT:  All right.  How old are you?

19             THE DEFENDANT:  I'm 62.

20             THE COURT:  How far in school did you go?

21             THE DEFENDANT:  I have a secondary education as a

22  paralegal.

23             THE COURT:  Okay.  Are you presently or have you

24  recently been under the care of a doctor, including a

25  psychiatrist for any reason?

```
                        Proceedings                     10

1              THE DEFENDANT:  I'm presently under the care of a

2      doctor, yes.

3              THE COURT:  For what condition?

4              THE DEFENDANT:  Type 2 diabetes.

5              THE COURT:  Do you take medication in connection

6      with that?

7              THE DEFENDANT:  Yes, I do.

8              THE COURT:  Did you take that medication before

9      coming to court today?

10             THE DEFENDANT:  No.

11             THE COURT:  When do you take it during the day,

12     throughout the day?

13             THE DEFENDANT:  I've got the diabetic condition

14     under control without complication.

15             THE COURT:  All right.  In the past 24 hours, have

16     you taken any kind of pills, drugs, medicine, or alcohol of

17     any kind?

18             THE DEFENDANT:  No.

19             THE COURT:  Is your mind clear today?

20             THE DEFENDANT:  Yes, it is.

21             THE COURT:  Mr. DuBoulay, have you discussed the

22     question of the guilty plea with your client?

23             MR. DUBOULAY:  I have Your Honor.

24             THE COURT:  And in your view, does he understand

25     the rights he is waiving by pleading guilty?
```

                          Proceedings                    11

1            MR. DUBOULAY:  He does.

2            THE COURT:  Do you have any question about his

3    competence to proceed?

4            MR. DUBOULAY:  No, Your Honor.

5            THE COURT:  All right.

6            MR. DUBOULAY:  I don't.

7            THE COURT:  All right.

8            Now, Mr. Shabazz-Muhammad, have you had enough

9    time to discuss with your attorney --

10            THE DEFENDANT:  Yes, Your Honor.

11            THE COURT:  -- the discussion to enter a guilty

12    plea in this case.

13            THE DEFENDANT:  Yes, I have had ample time,

14    Your Honor.

15            THE COURT:  Are you satisfied to have him

16    represent you?

17            THE DEFENDANT:  Yes, I am.

18            THE COURT:  All right.

19            Mr. DuBoulay --

20            Well, let me ask.  Now, have you read over the

21    charge in Count 2 before?

22            THE DEFENDANT:  Yes, I have.

23            THE COURT:  And have you discussed with counsel

24    what it is the Government would have to prove to support

25    that charge?

Proceedings                                    12

1          THE DEFENDANT:  Yes, I have.

2          THE COURT:  Okay.  So I am just going to summarize

3     the charge for you.

4          THE DEFENDANT:  Yes, Judge.

5          THE COURT:  It says, That on or about November 6th

6     of 2014 within the Eastern District of New York, and

7     elsewhere, Reginald Shabazz-Muhammad, and it also mentions

8     two other defendants --

9          THE DEFENDANT:  Yes.

10         THE COURT:  -- did knowingly and willfully make

11    one or more materially false fictitious and fraudulent

12    statements and representations in a matter within the

13    jurisdiction of the Executive Branch of the Government, to

14    wit, the Bureau of Prisons, in that the defendant falsely

15    stated, number one, that Marshall had been enrolled in a

16    treatment program for Muhammad Mosque Number 7 between

17    October 2003 and January 2010;

18         (B), that Marshall was suffering from active drug

19    dependence, namely, alcohol and marijuana when he enrolled

20    in that program;

21         And (C), while enrolled in the program, Marshall

22    was gradually reducing his active substance dependence when,

23    in fact, as the defendant then and there well knew and

24    believed Marshall had never been enrolled in a treatment

25    program through the Mohammad Mosque Number 7; Marshall was

Proceedings                                        13

1   not suffered from active drug dependence in October of 2003;

2   and Marshall was not abusing drugs or alcohol during the

3   time period stated in the letter.

4            Now, what the Government would have to prove, and

5   by prove, that is beyond a reasonable doubt, is that on or

6   about that date, that November 6th, 2014, that you made a

7   false statement of a material fact; and that means one that

8   is important to the outcome; that falsification was with

9   respect to a matter within the jurisdiction of

10  the Government of the United States.  And here they allege

11  and would have to prove that it was -- that it pertained to

12  the Bureau of Prisons, the executive branch; in other words,

13  that that's the person you made the materially false

14  statement to.

15           THE DEFENDANT:  Yes.

16           THE COURT:  They would have to prove that the

17  statements that I just read to you in that charge were false

18  and that they were material; in other words, important and

19  significant to the Bureau of Prisons in making their

20  decision.

21           And most importantly, they are going to have to

22  prove that at the time you made those statements in that

23  letter, you knew and well believed that they were false for

24  the reasons that they state, Marshall had never been

25  enrolled in a treatment program --

Proceedings                                           14

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  -- that he was not suffering from

3    active drug dependence; and he was not using drugs or

4    alcohol.

5          So they would have to prove that at least one of

6    those statements was false, and that you knew it was false,

7    and that you knowingly and willfully made those -- at least

8    one of those statements.  And all of that, that every

9    element they would have to prove by proof beyond a

10   reasonable doubt.

11         Do you understand the charge?

12         THE DEFENDANT:  Yes, I do --

13         THE COURT:  All right.

14         THE DEFENDANT:  -- Your Honor.

15         THE COURT:  All right.  What I want to review with

16   you now are the rights that you have, and these are rights

17   that you give up when you decide to plead guilty.  First of

18   all, you have a right to plead not guilty to this charge.

19         Do you understand that?

20         THE DEFENDANT:  Yes, I do.

21         THE COURT:  If you plead not guilty to the charge,

22   you have a right under the Constitution and Laws of the

23   United States to a speedy and public trial before a jury

24   with the assistance of your attorney.

25         Do you understand that?

Proceedings                                    15

1          THE DEFENDANT:  Yes, I do.

2          THE COURT:  At any trial you would be presumed

3    innocent.  You do not have to prove that you are innocent.

4    Under our system of law, it is the Government that comes

5    forward with the burden of proof, and they must establish

6    beyond a reasonable doubt that you are guilty of the crime

7    alleged.  If the Government failed to meet the burden of

8    proof, the jury would then have the duty to find you not

9    guilty.

10          Do you understand?

11          THE DEFENDANT:  Yes, I do.

12          THE COURT:  In the course of the trial, witnesses

13   for the Government would have to come here to court and

14   testify in your presence.  Your lawyer would have the right

15   to cross-examine these witnesses.  He could raise legal

16   objections to evidence the Government sought to offer

17   against you.  He could offer evidence on your behalf, and

18   that would include the fact that he would have the right to

19   *subpoena* witnesses to come here to court if he believed they

20   would be favorable to your case.

21          Do you understand that?

22          THE DEFENDANT:  Yes, I do.

23          THE COURT:  At trial you would have the right to

24   testify if you wanted to.  On the other hand, you could not

25   be forced to be a witness at your trial.  Under the

1    Constitution and Laws of the United States, no person can be

2    made to be a witness against himself.  All right?  Now, so

3    if you wanted to go to trial but you chose not to testify, I

4    would tell the jury that they could not hold that against

5    you.

6            Do you understand?

7            THE DEFENDANT:  Yes, I do.

8            THE COURT:  All right.  Now, instead of going to

9    trial, you are pleading guilty to the crime charged.  If I

10   accept your guilty plea, you will be giving up your right to

11   a trial and all the other rights I have just discussed.

12   There will be no trial in this case and no right to an

13   appeal on the question of whether you did or did not commit

14   the crime.  I will simply enter a judgment of guilty based

15   upon your plea.

16           Do you understand?

17           THE DEFENDANT:  Yes, I do.

18           THE COURT:  If you do plead guilty, I am going to

19   have to ask you questions about what you did in order to

20   satisfy myself that you are guilty of the charge.  You are

21   going to have to answer my questions and admit your guilt.

22   This means that you would be giving up your right not to

23   incriminate yourself.

24           Do you understand?

25           THE DEFENDANT:  Yes, I do.

```
                    Proceedings                    17
```

1         THE COURT:  Are you willing to give up your right

2    to a trial and all the other rights that I have just

3    discussed?

4         THE DEFENDANT:  Yes, I am.

5         THE COURT:  Okay.  I have a copy of the plea

6    agreement here.

7         Did you say you had the original?

8         MS. GERDES:  Yes, I do, Your Honor.  I'll pass it

9    up.

10        MR. SPEKTOR:  May I approach, Judge?

11        THE COURT:  I seem to be alone here.

12        MR. SPEKTOR:  Thank you.

13        THE COURT:  I thank you.

14        All right.  I have a document marked

15   Government's Exhibit 1.

16        All right.  Mr. Shabazz-Muhammad, is that your

17   signature on this document?

18        THE DEFENDANT:  Yes, it is, Your Honor.

19        THE COURT:  All right.  Did you read this plea

20   agreement?

21        THE DEFENDANT:  Yes, I did.

22        THE COURT:  And did you discuss it with your

23   attorney?

24        THE DEFENDANT:  Yes, I did.

25        THE COURT:  Do you believe that you understand the

Proceedings                                                18

1    provision of the plea agreement?

2              THE DEFENDANT:  I do.

3              THE COURT:  Is there anything at all in this plea

4    agreement that is not clear that you would like explained in

5    any further detail now?

6              THE DEFENDANT:  No, Judge.

7              THE COURT:  Did the Government make you some

8    promise that is not included in this plea agreement?

9              THE DEFENDANT:  None whatsoever.

10             THE COURT:  All right.

11             Ms. Gerdes, I take it that it's correct that this

12   document contains the entirety of any understanding your

13   office has reached with this defendant?

14             MS. GERDES:  Yes, Your Honor, that's correct.

15             THE COURT:  And, Mr. DuBoulay, that is your

16   understanding as well?

17             MR. DUBOULAY:  Yes, Your Honor.

18             THE COURT:  All right.  There is one provision of

19   the agreement that I want to bring specifically to your

20   attention because it involves giving up another right that

21   you have.  It says, The defendant agrees not to file an

22   appeal or otherwise challenge by petition pursuant to

23   28 U.S.C. Section 2255, or any other provision, the

24   conviction or sentence in the event that the Court imposes a

25   term of imprisonment of six months or below.

Proceedings                                    19

1          What I understand that to mean is if I give you a

2   sentence of six months or something less than that, you are

3   giving up your right to appeal your sentence to a higher

4   court.

5          Do you understand that?

6          THE DEFENDANT:  Yes, I do.

7          THE COURT:  And you are also -- let's say I gave

8   you six months, then you would also, once you were in prison

9   and custody, you would also be giving up your right to come

10  back and file a *habeas corpus* petition.

11         Do you understand that?

12         THE DEFENDANT:  Yes, I do.

13         MS. GERDES:  Your Honor, may I please just bring a

14  chair up?  I feel very light-head; is that --

15         THE COURT:  Yes.

16         MS. GERDES:  Thank you.

17         (Pause in proceedings.)

18         THE COURT:  Are you okay to proceed?

19         MS. GERDES:  I am.  I just need to sit down.

20  Thank you.

21         THE COURT:  Now, if I gave you more than six

22  months, you could appeal.

23         Do you understand that?

24         THE DEFENDANT:  Yes, I do.

25         THE COURT:  All right.  Are there any other

Proceedings                                    20

1    provisions that are unusual that the Court should go over

2    specifically?

3                MS. GERDES:  No, Your Honor.

4                THE COURT:  Okay.

5                All right.  Let me go over now the maximum

6    penalties for this offense.  The maximum penalty under the

7    law of this offense is five years in prison.

8                Do you understand that?

9                THE DEFENDANT:  Yes, I do.

10               THE COURT:  If the Court imposes a prison term, it

11   can follow that prison term by a period of supervised

12   release.  In this case, the maximum period of supervised

13   release is three years.  Now, supervised release would begin

14   after you serve your prison term.  When you are on

15   supervised release, your conduct is governed by certain

16   conditions.  Were you to violate the terms and conditions of

17   your supervised release, you could be sent back to prison

18   for two full years without getting any credit for the time

19   you spent on supervised release.

20               Do you understand that?

21               THE DEFENDANT:  Yes, I do.

22               THE COURT:  There are financial penalties up to

23   $250,000 and there is a $100 special assessment.  That $100

24   special assessment is mandatory, so I am required to impose

25   that.

```
                      Proceedings                      21
```

1           Do you understand that?

2           THE DEFENDANT:  Yes, I do.

3           THE COURT:  Are you a United States Citizen,

4   Mr. Shabazz-Muhammad?

5           THE DEFENDANT:  Yes, Your Honor, I am.

6           THE COURT:  Okay.

7           I guess I'm not quite sure what the guidelines --

8   the Government's guideline calculation is here.  It's just

9   6?

10          MS. GERDES:  Yes, Your Honor.

11          THE COURT:  Is that because you do not believe he

12  is entitled to acceptance, or why is it just --

13          MS. GERDES:  Well, because it's so low, he only at

14  this point would be eligible for the two-point reduction --

15          THE COURT:  But wouldn't that make him --

16          MS. GERDES:  -- not the third point.

17          THE COURT:  Oh, wait a minute --

18          MS. GERDES:  So it's 4.

19          THE COURT:  Oh, oh, I see.  I'm sorry.

20          MS. GERDES:  That's okay.

21          THE COURT:  You are going down.  I did not --

22  generally the way you do it is -- the reason I had a

23  question is you generally see the minus 2 in the --

24          MS. GERDES:  Oh, okay.

25          THE COURT:  -- written-out portion.

Proceedings                                    22

1          MS. GERDES:  Okay.  I'm sorry.

2          THE COURT:  All right.  So the Government in your

3    letter believes that your guideline range would be 0 to 6

4    months.  I don't know if that is accurate.  It is my

5    responsibility to make that calculation.  There is always

6    the possibility that the probation department, which will do

7    a report on you, will come up with some other factor that

8    the lawyers did not consider, so the possibility is that the

9    guideline range may be higher than that, and I cannot make

10   that determination today because I do not have enough

11   information to determine your guideline range.

12          Do you understand that?

13          THE DEFENDANT:  Yes, I do, Your Honor.

14          THE COURT:  The guideline range, you should

15   understand, it is an important factor.  But it is only one

16   of the factors that the Court has to consider.  It is not

17   bound to follow it.  I consider other factors such as the

18   seriousness of the offense, the need to promote respect for

19   the law, provide just punishment, the need for deterrence,

20   criminal conduct, the nature and circumstances of the

21   offense, how people similarly situated have been sentenced

22   in other cases.  So there are a whole other group of factors

23   that the Court takes into account.

24          Do you understand that?

25          THE DEFENDANT:  Yes, I do.

Proceedings                                    23

1      THE COURT:  If you enter a guilty plea today, your

2  guilty plea will stand.  You cannot come back to court at

3  the time of sentencing and tell me you have changed your

4  mind, that you want to go to trial.  At that point, it is

5  too late.

6      Do you understand that?

7      THE DEFENDANT:  Yes, I do.

8      THE COURT:  Mr. Shabazz-Muhammad, do you have any

9  questions that you want to ask me about, the charge, your

10  rights, or anything else related to this matter that might

11  not be clear?

12      THE DEFENDANT:  No, I don't, Judge.

13      THE COURT:  Counsel, do you know of any reason why

14  your Mr. Shabazz-Muhammad should not enter a plea of guilty

15  today?

16      MR. DUBOULAY:  No, Your Honor.

17      THE COURT:  Are you ready to plead?

18      (No audible response.)

19      THE COURT:  Mr. Shabazz-Muhammad --

20      THE DEFENDANT:  Oh --

21      THE COURT:  -- are you ready to plead?

22      THE DEFENDANT:  -- yes, I am.

23      THE COURT:  How do you plead to the charge in

24  Count 2; guilty or not guilty?

25      THE DEFENDANT:  Guilty.

Proceedings                                    24

1          THE COURT:  Are you making this plea of guilty

2     voluntarily and of your own free will?

3          THE DEFENDANT:  Yes, I am.

4          THE COURT:  All right.  Has anyone threatened,

5     forced, or pressured you in any way to plead guilty to this

6     charge?

7          THE DEFENDANT:  No.

8          THE COURT:  Has anyone made you a promise about

9     or -- well, let me ask you.  Other than the agreement with

10    the Government, has anyone made you a promise to cause you

11    to plead guilty?

12         THE DEFENDANT:  No.

13         THE COURT:  Has anyone promised you a sentence?

14         THE DEFENDANT:  No.

15         THE COURT:  All right.  So I need to hear from

16    you.  In connection with the crime charged, I want to hear

17    in your own words what you did that makes you guilty of this

18    charge?

19         THE DEFENDANT:  I created a letter, Judge.  The

20    letter contained false information.

21         THE COURT:  Did you know at the time that you

22    created the letter and sent it, that the information was

23    false?

24         THE DEFENDANT:  Yes, I did.

25         THE COURT:  So did you know that Marshall -- as it

Proceedings                                              25

1   charges in the indictment, did you know that Marshall was

2   not enrolled in the Muhammad Mosque program in October

3   of 2003?

4            THE DEFENDANT:  Yes, I did.

5            THE COURT:  Did you know that it was a false

6   statement that he was gradually reducing his active

7   substance dependence?

8            THE DEFENDANT:  Yes, I did.

9            THE COURT:  You, obviously, I take it, knew this

10  letter was going to the Bureau of Prisons?

11           THE DEFENDANT:  Yes, I did, Your Honor.

12           THE COURT:  Did you understand that these

13  statements were important to the Bureau of Prisons in terms

14  of whether they placed him in a drug program?

15           THE DEFENDANT:  I did at that time.

16           THE COURT:  Did you send this letter on or about

17  November 6th of 2014?

18           THE DEFENDANT:  To the best of my recollection,

19  yes.

20           THE COURT:  Did you send it from somewhere in the

21  Eastern District, in Brooklyn or --

22           THE DEFENDANT:  It was in Queens.

23           THE COURT:  In Queens?

24           THE DEFENDANT:  Right.

25           THE COURT:  Does the Government want me to make

Proceedings                          26

1    any further inquiry?

2              MS. GERDES:  No, Your Honor.  Thank you.

3              THE COURT:  Mr. DuBoulay, do you think I need to

4    make any further inquiry?

5              MR. DUBOULAY:  No, Your Honor.

6              THE COURT:  All right.  Based on the information

7    that you have given me, I find that the defendant is acting

8    voluntarily and fully understands the charge, his rights,

9    and consequences of his plea, and there is a factual basis

10   for his plea.  So I accept the plea of guilty to Count 2 in

11   the indictment.

12             All right.  Ms. Holly, do you want to give this

13   letter back?

14             THE COURTROOM DEPUTY:  Yes, Judge.

15             THE COURT:  All right.  Is there anything further

16   that either side thinks we need to address?

17             MS. GERDES:  No, Your Honor.  We appreciate you

18   taking the time to do this today.  Thank you.

19             THE COURT:  All right.  Then we're adjourned.

20             (Matter concluded.)

21                        --oo0oo--

22

23   *I (we) certify that the foregoing is a correct transcript*
     *from the record of proceedings in the above-entitled matter.*
24
     */s/ David R. Roy*                    *December 17, 2018*
25        *DAVID R. ROY*                        *Date*

*David R. Roy, RPR, CSR, CCR*
*Official Court Reporter*